IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS TURNER, | ) | CASE NO.  5:18-CV-01285-PAG |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN DAVID GRAY, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Marcus Turner ("Turner" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Turner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Turner*, Summit County Court of Common Pleas Case No. CR 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.   For the following reasons, the undersigned recommends that the Petition be DISMISSED IN PART and DENIED IN PART.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Turner's conviction as follows:

> {¶2} The procedural history of this case is set forth in this Court's prior decision in *State v. Turner*, 9th Dist. Summit No. 27532, 2015–Ohio–996. Briefly, Akron police arrested Marcus Turner on September 13, 2013, for the shooting death of a 21–year–old man. *Id.* at ¶ 2. A grand jury subsequently indicted Mr. Turner on counts for aggravated murder, felony

murder, felonious assault, having weapons while under disability, and several accompanying specifications. *Id.* The case proceeded to a jury trial. *Id.*

{¶ 3} The jury found Mr. Turner not guilty of aggravated murder, but guilty of having weapons while under disability. *Id.* at ¶ 3. The trial resulted in a hung jury with respect to the counts for felony murder and felonious assault. *Id.* As a result, the State elected to retry Mr. Turner on the felony-murder and felonious-assault counts. *Id.* at ¶ 4. Mr. Turner appealed, arguing that a retrial on the felony-murder count would violate his rights under the Double Jeopardy Clause of the United States Constitution. *Id.* at ¶ 6. This Court overruled Mr. Turner's appeal, and the matter proceeded to a second jury trial for felony-murder and felonious-assault counts. *Id.* at ¶ 15. That trial resulted in guilty verdicts, which are the basis of this appeal.

{¶ 4} Having briefly reviewed the procedural history of this case, we now turn to the underlying facts. Mr. Turner and the victim lived in neighboring apartment complexes. According to a neighbor, she observed the victim and another gentleman, C.S., leave Mr. Turner's apartment one morning carrying electronics and bags of Mr. Turner's belongings. When Mr. Turner returned home from work, she told him that the victim and C.S. had taken items from his apartment. Mr. Turner reported the burglary to the police, but they made no arrests.

{¶ 5} Later that evening, police responded to calls regarding a shooting at an apartment complex. One of those calls came from C.S., who told the 911 operator that Mr. Turner shot the victim. Upon arriving at the scene, officers observed the victim lying face down outside of C.S.'s girlfriend's apartment. C.S. then emerged from the apartment and explained what had happened, which was recorded on an officer's body camera and played for the jury. Specifically, C.S. told the officers that he had seen Mr. Turner earlier that day, and that Mr. Turner indicated he was going to retaliate against C.S. and the victim for burglarizing his apartment. C.S. further explained that he and the victim had left C.S.'s girlfriend's apartment to buy cigarettes. Almost immediately after leaving the apartment, C.S. saw Mr. Turner in a white t-shirt with a gun in his hand. C.S. then ran back into the apartment, heard multiple gunshots, and called the police. The victim remained outside, and sustained two gunshot wounds to his lower body. Officers later administered a double-blind photo line-up, and C.S. identified Mr. Turner as the shooter, noting that he was 100% certain.

{¶ 6} Despite identifying Mr. Turner as the shooter on the day of the incident, C.S. repeatedly stated at trial that he could not remember any details surrounding the shooting, and could not identify Mr. Turner as the shooter. He indicated that he had done a lot of drugs that day, and that his memory was not clear. An officer who spoke with C.S. on the day of the

2

shooting, however, testified that there was no indication that C.S. was under the influence of alcohol or drugs, and that he was consistent during his interviews with the police.

{¶ 7} Aside from C.S., one other eye witness testified. That witness testified that he had been visiting a friend's apartment that evening. As he was walking back to his car, he heard a "pop," which prompted him to turn toward the area of the shooting. When he did so, he saw the victim lying face down and man wearing a dark hooded sweatshirt and holding a gun standing over him. He then retreated into his friend's apartment, heard two additional gun shots, and called the police.

{¶ 8} In addition to the testimony of the two eye witnesses, the State presented testimony from several police officers regarding their investigation of the shooting, as well as their ultimate arrest of Mr. Turner the following day at a nearby hotel. Surveillance footage from the hotel showed Mr. Turner checking in on the day of the shooting, leaving a few hours later wearing a dark hooded sweatshirt, and returning after midnight without the sweatshirt. Police arrested Mr. Turner at the hotel without incident, and found over $13,000 in cash in his hotel room. Police did not locate a dark hooded sweatshirt or a gun.

{¶ 9} Mr. Turner's manager testified on behalf of the defense. He testified that Mr. Turner had taken a vacation day on the day of the shooting to deal with the burglary at his apartment. He also testified that Mr. Turner picked up his paycheck that evening, and that nothing seemed out of the ordinary. The defense also presented testimony from a neighbor, who testified that Mr. Turner started packing up his apartment after the burglary, and that a friend helped him move out that day.

{¶ 10} The jury ultimately found Mr. Turner guilty of felony murder, the predicate offense of felonious assault, and the accompanying firearm specifications. The trial court merged the two counts, and the State elected to proceed with sentencing on the felony-murder count. The trial court sentenced Mr. Turner to a total of 18 years of incarceration. He now appeals, raising one assignment of error for our review.

*State v. Turner*, 2017-Ohio-5560, 2017 WL 2803118, at **1-2 (Ohio App. 9th Dist. Jun. 28, 2017).

## II.     Procedural History

**A.     Trial Court Proceedings**

On October 3, 2013, the Summit County Grand Jury indicted Turner on the following charges: (1) aggravated murder, with forfeiture and firearm specifications; (2) murder, with forfeiture and firearm specifications; (3) felonious assault, with forfeiture and firearm specifications; and (4) having weapons while under disability, with a firearm specification.  (Doc. No. 8-1, Ex. 1.)  Turner entered pleas of not guilty to all charges.  (Doc. No. 8-1, Ex. 2.)

Turner was initially tried in the state trial court in November 2013 for aggravated murder, felony murder, felonious assault, and having weapons under a disability.  (Doc. No. 8-1, Ex. 3.)  The jury was unable to reach a verdict as to felony murder and felonious assault charges, but acquitted Turner of aggravated murder and found him guilty of having weapons under a disability.  (Doc. No. 8-1, Ex. 3, 4.)  The trial court sentenced Turner to a three-year term for having weapons under a disability.  (Doc. No. 8-1, Ex. 5.)  Thereafter, a re-trial was scheduled for the felony murder and felonious assault charges.  (Doc. No. 8-1, Ex. 6.)

On May 9, 2014, Turner filed an appeal of his conviction for having weapons under a disability. (Doc. No. 8-1, Ex. 7.)  The State moved to dismiss the appeal, arguing there was no final appealable order. (Doc. No. 8-1, Ex. 8.)   Turner filed a response in opposition to the State's motion to dismiss.  (Doc. No. 8-1, Ex. 9.)  On September 2, 2014, the state appellate court determined it lacked jurisdiction to hear the attempted appeal because it was not a final judgment of conviction since counts remained pending.  (Doc. No. 8-1, Ex. 10.)

On September 18, 2014, Turner filed a Motion to Dismiss with the state trial court, arguing his re-trial was in violation of the Double Jeopardy Clause.[1]  (Doc. No. 8-1, Ex. 11.)  The state trial court denied this Motion and Turner appealed this decision to the state appellate court.  (Doc. No. 8-1, Ex. 13, 14.)  The state appellate court, in a March 2015 decision, affirmed the state trial court's denial of the Motion to Dismiss, finding no Double Jeopardy violation had occurred.  (Doc. No. 8-1, Ex. 20.)  Turner appealed this decision to the Supreme Court of Ohio, which declined to accept jurisdiction.  (Doc. No. 8-1, Ex. 24.)

Turner was subsequently tried in the state trial court for felony murder and felonious assault in April 2016.  (Doc. No. 8-1, Ex. 25.)  A jury found Turner guilty of both counts.  (Doc. No. 8-1, Ex. 26.)  The trial court merged Count Three (felonious assault) and its accompanying firearm specification with Count Two (murder) and its accompanying firearm specification for sentencing purposes.  (Doc. No. 8-1, Ex. 27.)  The State elected to proceed with sentencing on Count Two and its specification.  (*Id.*)  The trial court sentenced Turner to a mandatory indefinite term of fifteen years to life on Count Two and a mandatory three-year term for the firearm specification.  (*Id.*)  The three-year sentence for the firearm specification was to be served first and consecutively to the sentence imposed for Count Two, but concurrently with the three-year sentence previously imposed for having weapons under a disability.  (*Id.*)

## B.    Direct Appeal

Turner, through counsel, filed a timely notice of appeal to the Ninth District Court of Appeals.  (Doc. No. 8-1, Ex. 28.)  The state appellate court determined it lacked jurisdiction over the attempted appeal because the appealed order did not resolve all counts against Turner in one document.  (Doc. No. 8-1, Ex. 29.)  The trial court thereafter issued a judgment of conviction *nunc pro tunc*.  (Doc. No. 8-1, Ex. 30.)

---

[1] Turner presented a single assignment of error: "The trial court erred in denying the appellant's motion to dismiss because he was acquitted of aggravated murder; therefore, per the Double Jeopardy Clause of the United States Constitution, he can not be tried a second time for felony murder."  (Doc. No. 8-1, Ex. 16.)

Turner, through counsel, timely appealed the judgement of conviction *nunc pro tunc*.  (Doc. No. 8-1, Ex. 31.)  In his appellate brief, he raised the following assignment of error: "Appellant's convictions for murder and felonious assault with gun specifications were based upon insufficient evidence as a matter of law, and were against the manifest weight of the evidence."  (Doc. No. 8-1, Ex. 32.)  The State filed a brief in response.  (Doc. No. 8-1, Ex. 34.)  On June 28, 2017, the state appellate court affirmed Turner's convictions.  (Doc. No. 8-1, Ex. 35.)

Turner failed to timely appeal to the Supreme Court of Ohio.  (Doc. No. 8-1, Ex. 36.)  On September 11, 2017, Turner, proceeding *pro se*, filed a Motion for Delayed Appeal with the Supreme Court of Ohio.  (Doc. No. 8-1, Ex. 37.)  On November 1, 2017, the Supreme Court of Ohio denied the motion for delayed appeal and dismissed the case.  (Doc. No. 8-1, Ex. 38.)

## C. Application to Reopen Appeal under Ohio App. R. 26(B)

On September 12, 2017, Turner filed a *pro se* Application to Reopen Appeal Pursuant to Ohio App. R. 26(B).  (Doc. No. 8-1, Ex. 39.)  Turner's Application asserted ineffective assistance of appellate counsel.  (*Id.*)  Specifically, Turner argued he received ineffective assistance of appellate counsel for his failure to raise the following assignments of error on appeal:

I.    Appellant's convictions violate the Double Jeopardy Clause of the Fifth Amendment and the fundamental fairness guarantee by the Due Process Clause of the Fourteenth Amendment U.S. Constitution.

II.   Appellant's conviction for Having a Weapon under Disability based on insufficient evidence as a matter of law, in violation of the Due Process Clause of the Fourteenth Amendment U.S. Const.

III.  Counsel violated appellant's right to effective assistance of counsel in the manner in which he asserted the Assignment of Error (insufficient evidence), in his brief. Sixth and Fourteenth Amend. U.S. Constitution.

IV.   The Court erred by calling Carlton Smith as its own witness.

V.    The Court erred by denying Defendant's Motion for Mistrial after Unsworn Testimony was given before the Jury.

6

(*Id.*)  The State filed a brief in opposition.  (Doc. No. 8-1, Ex. 40.)

On October 30, 2017, the state appellate court denied Turner's application to reopen on the merits. (Doc. No. 8-1, Ex. 41.)

On December 11, 2017, Turner appealed the state appellate court's decision denying his application to reopen his appeal.  (Doc. No. 8-1, Ex. 42.)  The State did not file a response.  (Doc. No. 8-1, Ex. 44.)  On February 14, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 8-1, Ex. 45.)

**D.    Federal Habeas Petition**

On May 24, 2018,[2] Turner filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:  Petitioner's Convictions for Murder and Felonious Assault with Gun Specifications were based upon Insufficient evidence as a matter of law.
>
> > **Supporting Facts**:  The Ninth Appellate District unreasonably applied the Sufficiency standard to the facts of the Petitioner's case, as no reasonable finder of fact could of [sic] found Petitioner guilty of the elements of 2903.11(A)(2) and 2903.02B.
>
> **GROUND TWO**:  Ineffective Assistance of Appellate Counsel
>
> > **Supporting Facts**:  Appellate Counsel was ineffective for failing to raise the issue that Petitioner's convictions conflicts [sic] with the Double Jeopardy Clause of the Fifth and Fourteenth amendments.  Petitioner argued in his first trial the Jury decided the critical of facts [sic] in his favor that he did not cause the death of another and acquitted him of the charge of Aggravated Murder.  A retrial violated the Fifth and Fourteenth Amendments because the trial was on the same set of facts that supported the essential elements of the charge he was acquitted on and the state did not and could not distinguish.
>
> **GROUND THREE**:  Ineffective Assistance of Appellate Counsel

---

[2]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until June 6, 2018, Turner states that he placed it in the prison mailing system on May 24, 2018.  (Doc. No. 1 at 19.)  Thus, the Court will consider the Petition as filed on May 24, 2018.

**Supporting Facts**:  Appellate Counsel was ineffective for failing to challenge the trial courts [sic] decision to call (Carlton Smith) as its own witness in the first trial.  Trial court abused its descretion [sic] by calling (Smith) as its own witness in the absence of an actual determination that he was likely to testify in contradiction to his previous statements, when a less prejudicial alternative existed in enforcing the subpoena.

**GROUND FOUR**:  Ineffective Assistance of Appellate Counsel

**Supporting Facts**:  The Trial Court erred by refusing Petitioner's Motion for a Mistrial following the receipt of unsworn testimony.  Which violated Evidence Rule 603.

**GROUND FIVE**:  Ineffective Assistance of Appellate Counsel

**Supporting Facts**:  The Petitioner argues that although his convictions for Having A weapon under Disability resulted from the initial trial.  The conviction did not become ripe for review until the verdict in the second trial became final.  The testimony of Carlton Smith repeatedly indicated to the Court that his out of court statements and identification was not reliable.  No rational trier of fact could have found the elements of Weapons Under Disability.  Appellant's conviction for having A Weapon Under Disability is based on insufficient evidence as a matter of law, in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

**GROUND SIX**:  Ineffective Assistance of Appellate Counsel

**Supporting Facts**:  Counsel failed to direct the courts [sic] attention to the essential element the State failed to prove that he caused the death of another.  Appellate Counsel violated Appellant's right to effective assistance of counsel in the manner in which he asserted the Assignment of Error (insufficient evidence), in his brief.  Petitioner's appellate attorney had a duty to properly assert this assignment of error in the manner that required the court to apply the Jackson standard with explicit reference to the essential element of the charge that was in question.

(Doc. No. 1.)

On October 18, 2018, Warden David Gray ("Respondent") filed his Return of Writ.  (Doc. No. 8.)

On November 19, 2018, Turner filed a Motion to Amend his Petition to add the following additional ground for relief:

8

**GROUND SEVEN**:  I am being held in violation of the Constitution of the United States, for the reason that my convictions for Felony-Murder and Felonious Assault are in violation of the Double Jeopardy Clause.

> **Supporting Facts**:    The Court of Appeals decision to deny Turner's appeal on this issue, and allow the second trial to take place was contrary to and/or an unreasonable application of federal law.  Because the jury had already decided in the first trial the question of, "ultimate fact," that Turner <u>had not</u>, caused the death of the victim.  The State's theory of the case was that the shooting was retaliation for the victim allegedly breaking into Turner's home and stealing his property. That when the victim exited his friends [sic] apartment Turner walked right up to the victim and shot him.  If the jury would have believed that Turner caused the victims [sic] death.  They would have been bound by law to find that it was with prior calculation and design, aggravated murder.  However, the jury found that he did not.  So it was an unreasonable application of federal law, that caused the court of appeals to determine that the jury simply could not find prior calculation and design to justify its not guilty verdict.  (Note: the respondent has not submitted the transcripts from Turner's first trial in preparing the record for the court.)
>
> The petitioner contends the jury found that he did not cause the death of the victim because the state produced an additional witness that testified the actual individual that shot the victim was wearing a black or dark colored hoodie, but couldn't identify the person.  And Turner had been positively indentified at the scene wearing a white T-shirt when the shots were fired.  The witness that identified Turner wearing the white T-shirt informed the reporting officer that he had retreated into his apartment and immediately heard the shots.  The state also presented evidence that approximately three hours before the shooting Turner was seen leaving his hotel room wearing a dark hoodie so as to suggest to the jury it was Turner that shot the victim.  The jury clearly did not believe it to be so, because the state's own witness clearly identified Turner wearing white while its other witness identified the shooter wearing a dark colored hoodie.

(Doc. No. 10.)  Respondent did not file an opposition to the Motion to Amend.

In an order dated December 6, 2018, the Court found, after reviewing the state court record, that Turner raised a similar claim in the state courts, and thus Ground Seven appeared to be exhausted.  (Doc. No. 12 at 2) (citing Doc. No. 8-1, Ex. 11, 19, 20, 22.)  Given Turner's *pro se* status, the likely exhaustion of the claim, and the fact that the Motion to Amend was unopposed, the Court granted the Motion to Amend.  (Doc. No. 12.)   The Court ordered Respondent to file a supplemental brief addressing Turner's

seventh ground for relief by January 7, 2019 and ordered Turner to file a Reply/Traverse in support of all his claims by February 6, 2019.  (*Id.*)

Turner filed a Reply/Traverse on December 13, 2018.  (Doc. No. 13.)  On December 20, 2018, Respondent filed his Supplemental Answer/Return of Writ.  (Doc. No. 14.)  On January 29, 2019, Turner filed a Notice indicating his December 6, 2018 Reply/Traverse contained his argument in support of Ground Seven and he would not be filing any additional argument.  (Doc. No. 15.)

Also on January 28, 2019, Turner filed a Motion to Supplement the Record, seeking an order directing Respondent to file the transcripts from his first trial.  (Doc. No. 16.)   Respondent opposed the motion.  (Doc. No. 17.)  For the first time, Respondent asserted that, "to the extent Turner seeks to add felonious assault to his Double Jeopardy claim, that portion of habeas ground seven is unexhausted and may subject Turner's entire petition to dismissal."  (*Id.* at 4) (citation omitted).  On March 5, 2019, the Court denied Turner's Motion to Supplement the Record.  (Doc. No. 18.)  In that decision, the Court acknowledged Respondent's exhaustion argument.  (*Id.* at 3 n.2.)  However, the Court declined to make a determination "regarding the procedural default or exhaustion of any claim" in ruling on a motion to supplement the record.  (*Id.*)  The Court stated it would "fully consider the parties' arguments regarding procedural default and/or exhaustion when it considers the entire Petition."  (*Id.*)

### III. Exhaustion and Procedural Default

#### A.      Legal Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are

---

[3]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)."  *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n.28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*.  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice

requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

## B.    Application to Petitioner

Turner admits he failed to timely present Ground One (insufficient evidence to support his convictions for murder and felonious assault with gun specifications) to the Supreme Court of Ohio. (Doc. No. 1 at 5.) However, he claims this was because he received his "Appeal late from his Attorney." (*Id.*) In his Traverse, Turner explains further that he was unaware the Court of Appeals issued its decision in his appeal until he "received a court order to pay a stated obligation (court cost) in C.A. 28298 from the administrator at Belmont Correctional on August 4, 2017." (Doc. No. 13 at 9.) Turner maintains that once he received that notice, he "without delay" contacted the Clerk of Court of the state appellate court requesting a "time stamped copy" of the decision and journal entry. (*Id.*) In an August 7, 2017 letter to

13

the Clerk of Court, Turner wrote, "To date I have not formally received a notice of that decision, nor a time stamped copy of the court's decision from your office.  Neither has my attorney contacted me on the matter to provide me a copy.  I need a time stamped copy of the court's journal entry and opinion to perfect an appeal to the Supreme Court."  (*Id.*; Doc. No. 8-1, Ex. 37.)  Turner represents he did not receive a date-stamped copy of the state appellate court's decision until August 16, 2017 – four days after his deadline to appeal to the Supreme Court of Ohio.  (Doc. No. 13 at 9-10.)   Turner filed his Motion for Delayed Appeal on September 11, 2017.  (Doc. No. 8-1, Ex. 37.)  Therefore, relying on *Smith v. State of Ohio Dept. of Rehab and Corr.*, 463 F.3d 426 (6th Cir. 2006), Turner maintains cause and prejudice exist to avoid procedural default.  (Doc. No. 13 at 9-11.)

Respondent concedes *Smith* is "generally positive" for Turner for two reasons: (1) "his lawyer failed to advise him of the result of the lower court's decision until 8 days were left to appeal"; and (2) Turner "presented his appeal within the 45-day appeal period required by the state supreme court's rule." (Doc. No. 8 at 19.)  Nevertheless, Respondent maintains Ground One is procedurally defaulted for two reasons.  (*Id.*)  First, the *Smith* court found notice with three days left before the time to appeal expired, but Turner had eight.  (*Id.* at 20.)  Respondent argues Turner could have presented an appeal of this single issue (which had been briefed below) within eight days.  (*Id.*)  Second, "[i]f there is no rational basis to appeal there can be no prejudice to avoid the procedural default."  (*Id.*)  Taking a "rational view" of Turner's appeal "leads to the conclusion that the outcome was not going to change in the Supreme Court of Ohio."  (*Id.* at 21.)  Therefore, there can be no prejudice to avoid the procedural default.  (*Id.*)

In his Traverse, Turner takes issue with Respondent's argument that he had eight days before his deadline to appeal the state appellate court's decision.  (Doc. No. 13 at 10.)  Turner states he "could not by rule perfect the appeal until he received the time stamped copy of the court of appeals [sic] judgment to

14

attach to the memorandum.  [sic] Which he received 4 days after the filing deadline.  Therefrom, [sic] leaving the filing a [sic] motion for delayed appeal as his only remedy under Ohio law."  (*Id.*)

As set forth *supra*, Turner raised his insufficiency of the evidence claim on direct appeal to the state appellate court.  (Doc. No. 8-1, Ex. 32.)  The state appellate court affirmed Turner's convictions on June 28, 2017.  (Doc. No. 8-1, Ex. 35.)  Turner failed to timely appeal to the Supreme Court of Ohio and, instead, filed a motion for leave to file a delayed appeal on September 11, 2017.  (Doc. No. 8-1, Ex. 36, 37.)  On November 1, 2017, the Supreme Court of Ohio denied Turner's motion for leave to file a delayed appeal and dismissed the case.  (Doc. No. 8-1, Ex. 38.)

Under its procedural rules, the Ohio Supreme Court has jurisdiction over timely appeals which are made within 45 days of the state appellate court's decision.  *See* Ohio S.Ct.Prac.R. 6.01(A)(1) & 7.01(A)(1).  The Ohio Supreme Court may, in its discretion, take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac.R. 7.01(A)(4).  However, where (as here) the delayed appeal is not allowed, the Sixth Circuit Court of Appeals has held that even an unexplained decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar:

> This case turns upon whether the Ohio Supreme Court entry denying Bonilla's motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of Bonilla's habeas corpus petition. Upon examination of the Ohio Supreme Court Rules, we conclude that it does. The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id*. A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id*. Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4) (c). **Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.**

15

*Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (emphasis added); *accord Baker v. Bradshaw*, 495 F. App'x 560, 565 (6th Cir. 2012) ("The timeliness requirements for an appeal to the Ohio Supreme Court ... constitute adequate and independent state grounds to preclude hearing an untimely claim on the merits."); *Carman v. Ohio*, No. 1:14 CV 2060, 2015 WL 1189084 (N.D. Ohio Mar. 16, 2015); *Crutchfield v. Warden*, No. 1:13-cv-438, 2014 WL 3899287 (S.D. Ohio Aug. 11, 2014) (finding that where the petitioner's motion for delayed appeal before the Ohio Supreme Court was denied, the petitioner must demonstrate cause for his default and actual prejudice to avoid dismissal).

The Court finds Turner's failure to file a timely appeal from the June 28, 2017 state appellate court decision to the Ohio Supreme Court, coupled with the Ohio Supreme Court's denial of a motion for delayed appeal, resulted in a procedural default. Therefore, Ground One is procedurally barred unless Turner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

The failure of an appellate counsel to timely inform a petitioner of a state appellate court decision can constitute ineffective assistance of counsel. *Smith v. State of Ohio Dept. of Rehab and Corr.*, 463 F.3d at 433 ("[C]ounsel has a duty to inform the accused of the resolution in a proceeding in a timely fashion so that the accused retains his control over the decision to appeal."). However, ineffective assistance of counsel can only serve as cause to excuse procedural default if the underlying claim of ineffective assistance of counsel is not itself defaulted. *See Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).

16

Here, while Turner filed an application to reopen his appeal under Ohio App. R. 26(B) on September 12, 2017 (one day after he filed his motion for delayed appeal with the Supreme Court of Ohio), he did not present a claim of ineffective assistance of counsel based on appellate counsel's failure to inform him timely of the state appellate court's decision to the state courts.  (Doc. No. 8-1, Ex. 39.) Ohio law does not provide for second or successive 26(b) applications to reopen in any instance.  *Warman v. Buchanan*, No. 2:180cv0564, 2019 WL 3491268, at *4 (S.D. Ohio Aug. 1, 2019), *report and recommendation adopted by* 2019 WL 6974393 (S.D. Ohio Dec. 20, 2019).  *See also, e.g., State v. Richardson*, 74 Ohio St.3d 235, 1996-Ohio-258. 658 N.E.2d 273 (Ohio 1996); *State v. Cheren*, 73 Ohio St.3d 137, 1995-Ohio-28, 652 N.E.2d 707 (Ohio 1995); *State v. Peeples*, 73 Ohio St.3d 149, 1995-Ohio-36, 652 N.E.2d 717, 718 (Ohio 1995); *State v. Cooey,* 99 Ohio St.3d 345, 2003-Ohio-3914, 792 N.E.2d 720, ¶5 (Ohio 2003) ("'Neither App.R. 26(B) nor *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, provides a criminal defendant the right to file second or successive applications for reopening.'") (internal citations omitted).  Thus, any suggestion that ineffective assistance of appellate counsel provides cause to excuse the default of these claims is without merit because any underlying ineffective assistance of counsel claim is itself defaulted.

In the absence of cause, a court need not reach the issue of prejudice.  *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000); *Sandridge v. Buchanan*, 1:16CV2299, 2017 WL 2255378, at *11 (N.D. Ohio April 27, 2017).

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error

17

with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 497 F. App'x at 480.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Id*. at 316.

Here, Turner asserts he is actually innocent of shooting the victim in this case.  (Doc. No. 13 at 15-17.)  However, he fails to present any new, reliable evidence of his innocence.  (*Id.*)  Therefore, the Court finds Turner has failed to demonstrate the procedural default of Ground One should be excused on the basis of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Ground One be DISMISSED as procedurally defaulted.

## IV. Review on the Merits

### A.    Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

18

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."

19

*Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.    Ineffective Assistance of Counsel Claims

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the

proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689.  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105.  *See also Kennedy v. Warren*, 428 Fed. App'x 517, 520 (6th Cir. May 3, 2011); *Phillips v. Sheldon,* 2014 WL 185777, at *14-15 (N.D. Ohio Jan. 16, 2014).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, the two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

### a.    Ground Two

In Ground Two, Turner argues appellate counsel was ineffective "for failing to raise the issue that Petitioner's convictions conflicts [sic] with the Double Jeopardy Clause of the Fifth and Fourteenth amendments." (Doc. No. 1 at 7.) Respondent pointed out the state appellate court "decided this issue" in Turner's first appeal ("*Turner I*"). (Doc. No. 8 at 26-27.) Respondent asserts, "Under *Strickland* it cannot be ineffective assistance of appellate counsel to decline to present an assignment of error that had been presented and decided on its merits in an earlier adjudication, as was the double jeopardy argument in this case." (*Id.* at 28.)

In his Traverse, Turner states as follows with respect to Ground Two:

> Turner's claim is that his appellate counsel was deficient in performance for not raising on appeal that his convictions for felony-murder and felonious assault violate the double jeopardy clause.
>
> However, after assessing the respondent's answer. [sic] He believe [sic] the respondent may be right in its argument that appellate counsel had no duty to re-argue on appeal an issue that had already been adjudicated in an interlocutory appeal to stop the retrial. <u>State v. Turner, Ninth App. Dist.</u>

22

> No. 27532, 2015 LEXIS 956, 2015 Ohio 996 (March 18, 2015). ("Turner I")
>
> Turner attributes his oversight and misunderstanding of appellate counsel's duty in relation to the double jeopardy claim on appeal as of right to his pro se capacity.  But nevertheless, has moved this habeas court for leave to amend his petition pursuant to Fed.R. Civ. P. 15, filed on or about November 19, 2018. [sic] To include the double jeopardy violation that he believes occurred in his case as ground number seven due to the importance of the issue.  And for the reasons, the issue has been adjudicated on the state level, the respondent's [sic] are aware of the issue and has in effect already submitted an answer and will not suffer undue delay or prejudice.  Also it has not been adjudicated on the federal level for determination if the state court reasonably or unreasonably applied the standard set forth in Yeager v. United States, 557 U.S. 110, 120 (2009), quoting Ash v. Swenson, 397 U.S. 436, 443 (1970).
>
> See proposed GROUND SEVEN IN MOTION FOR LEAVE TO AMEND.

(Doc. No. 13 at 17-18.)

The Court interprets Turner's statement as essentially withdrawing his argument he received ineffective assistance of appellate counsel when appellate counsel failed to raise the Double Jeopardy argument in his second appeal ("*Turner II*") and electing to proceed with his argument of the underlying claim – his Double Jeopardy argument itself – presented in Ground Seven.  Therefore, the Court determines Ground Two is withdrawn and will address Turner's Double Jeopardy argument in Ground Seven, *infra*.

### b.    Ground Six

In Ground Six, Turner argues:

> Counsel failed to direct the courts [sic] attention to the essential element the State failed to prove that he caused the death of another.  Appellate Counsel violated Appellant's right to effective assistance of counsel in the manner in which he asserted the Assignment of Error (insufficient evidence), in his brief.  Petitioner's appellate attorney had a duty to properly assert this assignment of error in the manner that required the court to apply the Jackson standard with explicit reference to the essential element of the charge that was in question.

23

(Doc. No. 1 at 15.)  Respondent noted it was unclear what exactly Turner was arguing, but "appellate counsel did indeed argue insufficient evidence in *Turner II* as to the felony murder offense, and it is difficult to imagine how an appellate argument could have been improved by the assertion that either there was no death or that the evidence from Smith had no role in connecting Turner to that death."  (Doc. No. 8 at 33-34.)

In his Traverse, Turner provided the following additional explanation of his argument:

> Specifically, counsel's sufficiency argument was that the statements of prosecution witness Carlton Smith, indicating Turner as the individual that shot Amendeep Singh were unsworn.  And as a result, the court found that counsel's argument sounded more in weight, not sufficiency.

> Turner believes that the Jackson v. Virginia standard should have guided counsel's reasonable professional judgment.  To base his sufficiency argument on the record evidence adduced at trial.  Such as, although Carlton Smith did make out of court statements to the 911 operator, and Sergeant Prough indicating Turner as the shooter.  Prough testified that Smith informed him the [sic] he was actually inside his apartment when the shots were fired and only heard them.  A corroboration of Smith testifying, "I didn't see nobody shoot nobody," (TOP 137).  And, that the prosecution's secondary witness Jesse Nangle, testified to seeing the actual shooter.  Which was someone dressed in a black hoody. (TOP 81-99).  Apparel completely different from the white t-shirt Smith identified Turner as wearing at the time of the incident.  (TOP 212-214)

> For the court of appeals to conclude that counsel's argument was more of manifest weight than sufficiency.  And then find that counsel did not render ineffective assistance of counsel, given the record evidence in this case.  The decision involved an unreasonable application of Strickland.  And Turner believes no fair minded jurist would disagree.

(Doc. No. 13 at 21-22.)

The record reflects Turner raised this argument in his 26(B) Application to the state appellate court and again on appeal to the Supreme Court of Ohio.  (Doc. No. 8-1, Ex. 39, 43.)  The state appellate court rejected this argument on the merits, as follows:

> Pursuant to Appellate Rule 26(B), to justify reopening an appeal, the applicant has the burden of establishing a "genuine issue" of ineffective assistance of appellate counsel.  *State v. Sanders*, 94 Ohio St.3d 150, 151

24

(2002).  The analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate standard to assess whether an applicant has raised a "genuine issue" of ineffective assistance of appellate counsel. *Sanders* at 151.  To demonstrate ineffective assistance of counsel, the applicant must show that "counsel's representation fell below an objective standard of reasonableness" and that, but for the deficient representation, there is a reasonable probability that the movant would have been successful on appeal.  *Strickland* at 668, 695; *see also State v. Hill*, 90 Ohio St.3d 571, 572 (2001), citing *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

\* \* \*

. . . Thus, the only remaining issue is whether his appellate counsel provided ineffective assistance by failing to properly develop an argument with respect to the sufficiency of the evidence in the second appeal.

In the second appeal, this Court noted that Mr. Turner's challenge to the sufficiency of the evidence sounded in weight, not sufficiency.  *Turner II* at ¶ 14.  Notwithstanding, this Court held that "[h]aving reviewed the record, we cannot say that, viewing the evidence in a light most favorable to the prosecution, insufficient evidence existed to support Mr. Turner's convictions." *Id.*  Mr. Turner, therefore, cannot establish that he suffered prejudice as a result of his appellate counsel's failure to properly develop an argument with respect to the sufficiency of the evidence in the second appeal.

Having reviewed Mr. Turner's application for reopening, we conclude that he has failed to establish a "genuine issue" of ineffective assistance of counsel.  App.R. 26(B)(5).  Accordingly, the application is denied.

(Doc. No. 8-1, Ex. 41.)

In *Turner II*, the state appellate court found as follows:

{¶ 11} In his assignment of error, Mr. Turner challenges both the sufficiency and manifest weight of the evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant

25

> inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} When addressing a challenge to the manifest weight of the evidence, we must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins* at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340.

{¶ 13} As previously noted, the jury found Mr. Turner guilty of felony murder and the predicate offense of felonious assault. The felonious-assault statute provides, in part, that "[n]o person shall * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" R.C. 2903.11(A)(2). Additionally, the felony-murder statute provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]" R.C. 2903.02(B).

{¶ 14} Mr. Turner challenges the sufficiency of the evidence on the basis that C.S.'s statements to the 911 operator and to the police officers on the day of the shooting were not made under oath. He further challenges the sufficiency of the evidence on the basis that the testimony of the two eye witnesses differed as to what the shooter was wearing (i.e., a white t-shirt and a dark hooded sweatshirt). Mr. Turner's argument, however, sounds in weight, not sufficiency. Having reviewed the record, we cannot say that, viewing the evidence in a light most favorable to the prosecution, insufficient evidence existed to support Mr. Turner's convictions.

{¶ 15} With respect to his challenge to the manifest weight of the evidence, Mr. Turner argues that the only evidence supporting his involvement in the shooting came through C.S.'s unsworn statements to

the police, which he recanted at trial. Mr. Turner's argument, however, ignores much of the evidence presented at trial. For example, it ignores the testimony of the other eye witness who testified that the shooter was wearing a dark hooded sweatshirt, and the corroborating surveillance footage showing Mr. Turner leaving the hotel wearing a dark hooded sweatshirt, but returning later without it. Further, to the extent that the jury chose to believe C.S.'s statements to the 911 operator and to the police on the day of the shooting, as opposed to his trial testimony wherein he repeatedly stated "I don't remember[,]" it was entitled to do so. *See State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012–Ohio–4094, ¶ 42, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011–Ohio–3250, ¶ 35 ("[c]redibility determinations are primarily within the province of the trier of fact[,]" who is " 'free to believe all, part, or none of the testimony of each witness.' "); *State v. Walker*, 55 Ohio St.2d 208, 213 (1978) ("where there is a conflict of evidence, the jury is to resolve the conflict[.]").

{¶ 16} Having reviewed the record, we cannot say that the jury clearly lost its way when it found Mr. Turner guilty of felony murder and the predicate offense of felonious assault. Accordingly, Mr. Turner's assignment of error is overruled.

*State v. Turner*, 2017-Ohio-5560, 2017 WL 2803118, at **2-4.

For the following reasons, the Court finds the state appellate court reasonably concluded appellate counsel was not ineffective for failing to properly develop an argument with respect to the sufficiency of the evidence in *Turner II*. The state appellate court engaged in a thorough review of the record in *Turner II*, and analyzed the sufficiency and the weight of the evidence supporting Turner's convictions. Most notably, the state appellate court considered C.S.'s statements to the 911 operator and police officers at the time of the shooting and at trial, as well as the other witness's testimony. In its decision denying his application to reopen his appeal, the state appellate court noted despite counsel's argument sounding more in weight than sufficiency, it went on to determine in *Turner II* that in viewing the record in a light most favorable to the prosecution, it could not say there was insufficient evidence to support Turner's convictions. Therefore, it determined Turner could not make a showing under *Strickland*'s prejudice prong.

27

Thus, to the extent appellate counsel's brief could be found lacking with respect to the sufficiency of the evidence argument, the state appellate court properly reviewed the evidence at trial for sufficiency of the evidence notwithstanding appellate counsel's alleged failure to properly present such an argument and found that it was sufficient.  *See Withrow v. Moore*, No. 1:14CV1-79, 2016 WL 455629, at *14 (N.D. Ohio Feb. 5, 2016).  Appellate counsel's actions did not substantially alter the outcome of the appeal.  *Id.*  Therefore, no *Strickland* violation is present.  *Id.*

      **c.**      **Grounds Three, Four, and Five**

Grounds Three, Four, and Five relate to Turner's conviction at his first trial for having a weapon while under a disability.  (Doc. No. 13 at 18.)  In Ground Three, Turner argues appellate counsel "was ineffective for failing to challenge the trial courts [sic] decision to call (Carlton Smith) as its own witness in the first trial."  (Doc. No. 1 at 8; Doc. No. 13 at 18.)  In Ground Four, Turner asserts appellate counsel "was ineffective for failing to challenge the trial court's error in refusing Petitioner's motion for a mistrial following the receipt of unsworn testimony. [sic] Which violated Evidence Rule 603."  (Doc. No. 13 at 18; *see also* Doc. No. 1 at 10.)  In Ground Five, Turner argues appellate counsel "was ineffective for not challenging the sufficiency of the evidence on his conviction for Having a Weapon Under Disability."  (Doc. No. 13 at 18; *see also* Doc. No. 1 at 13.)[4]

The record reflects Turner raised these arguments in his 26(B) Application to the state appellate court and again on appeal to the Supreme Court of Ohio.  (Doc. No. 8-1, Ex. 39, 43.)  However, the state

---

[4] Turner "notes" in his Reply/Traverse that Respondent "has not submitted the transcripts from Turner's first trial as part of the record in its answer."  (Doc. No. 13 at 18.)  But Turner only moved to expand the record to include the transcripts from his first trial as to Ground Seven (Double Jeopardy) (Doc. No. 16), which Respondent opposed (Doc. No. 17) and the Court denied (Doc. No. 18).  *See* n.6, *infra*, for a discussion of the reasoning for the denial.  Based upon the facts presented here, this is not a dispositive issue.  Even without the transcripts from his first trial, as discussed in detail *infra*, Turner fails to show a *Strickland* violation where the state appellate court considered the sufficiency and manifest weight of the evidence regarding his convictions for murder and felonious assault with gun specifications.

appellate court interpreted his claims as asserting he received ineffective assistance of counsel in *Turner I*,

his first appeal:

> In his application for reopening, Mr. Turner argues that his appellate counsel provided ineffective assistance because his counsel: (1) failed to raise a double-jeopardy issue in the second appeal; (2) *failed to challenge the sufficiency of the evidence with respect to this conviction for having weapons under disability in the first appeal*; (3) failed to properly develop an argument with respect to the sufficiency of the evidence in the second appeal; (4) *failed to challenge the trial court's decision to call its own witness in the first appeal*; and (5) *failed to challenge the trial court's denial of his motion for a mistrial in the first appeal.*
>
> . . . Further, to the extent that Mr. Turner argues that his appellate counsel provided ineffective assistance in the first appeal, those arguments are untimely and Mr. Turner has not otherwise established good cause for noncompliance with the time requirements contained in Appellate Rule 26. *See* App.R. 26(B)(1).

(Doc. No. 8-1, Ex. 41) (emphasis added).

As Turner points out in his Traverse (Doc. No 13 at 19), the state appellate court misconstrued his

arguments as claims against appellate counsel in *Turner I* and therefore never addressed ineffective

assistance of appellate counsel in *Turner II* by failing to raise any issues from his first trial.  (Doc. No. 8-1,

Ex. 41.)  Respondent also interpreted all of Turner's ineffective assistance of counsel claims as stemming

from the appeal in *Turner II*.  (Doc. No. 8 at 27 n.7) ("Respondent construes Turner's argument in his

present petition to be that his appellate counsel in *Turner II* was constitutionally ineffective.  If Turner

shifts ground and wishes later to argue that appellate counsel in *Turner I* was ineffective, respondent will

argue that that issue is procedurally defaulted.")

"When a federal claim has been presented to a state court and the state court has denied relief, it

may be presumed that the state court adjudicated the claim on the merits *in the absence of any indication

of state-law procedural principles to the contrary.*"  *Harrington v. Richter*, 562 U.S. 86, 99 (2011)

(emphasis added).  As Respondent points out, this presumption also applies where the state court

"addresses some but not all of a defendant's claims."  (Doc. No. 8 at 30) (citing *McKinney v. Hoffner*, 830

F.3d 363, 368-69 (6th Cir. 2016) (citing *Johnson v. Williams*, 568 U.S. 289 (2012)).   Here, the state

appellate court, in misconstruing three of Turner's ineffective assistance of counsel claims, based its

decision on untimeliness – a procedural ground – not the merits.[5]   (Doc. No. 8-1, Ex. 41.)   As the Sixth

Circuit has explained:

> AEDPA's deferential standard of review applies only to claims that were
> actually adjudicated on the merits in state court proceedings.  *Robinson v.
> Howes*, 663 F.3d 819, 822-23 (6th Cir. 2011).   "Claims that were not
> adjudicated on the merits in State court proceedings receive the pre-
> AEDPA standard of review: *de novo* for questions of law … and clear
> error for questions of fact."  *Id.* at 823 (internal quotation marks omitted).

*English v. Berghuis*, 529 F. App'x. 734, 740 (6th Cir. 2013).   As the state appellate court never addressed

these three arguments on the merits, the AEDPA standard of review does not apply.   Claims of ineffective

assistance of counsel present mixed questions of law and fact, *Newman v. Vasbinder*, 259 F. App'x 851,

853 (6th Cir. 2008) (citing *Mapes v. Tate*, 388 F.3d 187, 190 (6th Cir. 2004)), and so the Court reviews

them *de novo.*  *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

In reviewing Turner's ineffective assistance of appellate counsel claims for failure to raise these

three issues regarding Turner's conviction for having a weapon under disability at his first trial, the Court

is mindful of the standards governing review of ineffective assistance of appellant counsel claims.   An

appellant has no constitutional right to have every non-frivolous issue raised on appeal, *Jones v. Barnes*,

463 U.S. at 750-54, and tactical choices regarding issues to raise on appeal are properly left to the sound

professional judgment of counsel, *United States v. Perry*, 908 F.2d at 59.   "[O]nly when ignored issues are

clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be

---

[5] Turner attempted to appeal his conviction for having a weapon under disability following his first trial.
(Doc. No. 8-1, Ex. 7.)  The State moved to dismiss the appeal, arguing there was no final appealable order
as the jury was deadlocked on the murder and felonious assault charges and the State would be retrying
Turner on those counts. (Doc. No. 8-1, Ex. 8.)  On September 2, 2014, the state appellate court concluded
it was without jurisdiction to consider Turner's attempted appeal, as the state appellate court had
previously held that when a jury is deadlocked on a particular count, the remaining counts are not final
and appealable until all counts have been resolved.  (Doc. No. 8-1, Ex. 10.)

overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

Evidentiary issues such as calling a court's witness and compliance with Evid. R. 603 are reviewed for abuse of discretion by the trial court. *See State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144, 148 (Ohio 1980); *State v. Frazier*, 61 Ohio St.3d 247, 574 N.E.2d 483, 487 (Ohio 1991). This is a very difficult standard to meet. *See Adams*, 404 N.E.2d at 149 ("The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."). The Court cannot say these two issues, as they relate to challenging Turner's conviction for having a weapon under disability, are "clearly stronger" than those presented by appellate counsel on appeal challenging Turner's convictions for murder and felonious assault, especially considering C.S. testified as a court's witness at the second trial following a thorough review by the trial court judge. (Doc. No. 8-3 at Page ID#485-504). Therefore, the Court finds appellate counsel's conduct was not so far below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. Furthermore, even if the Court found appellate counsel's performance deficient, Turner cannot show the outcome of his appeal would have been different by including these two grounds when the state appellate court found the evidence presented at trial was sufficient to support his convictions for murder and felonious assault with gun specifications. *State v. Turner*, 2017-Ohio-5560, 2017 WL 2803118, at **2-4. Therefore, there is no *Strickland* violation for Grounds Three and Four.

Appellate counsel's failure to challenge the sufficiency of the evidence supporting Turner's conviction for having a weapon under disability is perhaps a closer question, as appellate counsel was already challenging the sufficiency and weight of the evidence to support Turner's convictions for murder and felonious assault. However, the fact remains that after the first jury convicted Turner of having a

31

weapon under disability but deadlocked on the charges of murder and felonious assault, a second jury convicted him on those charges. Therefore, again, the Court cannot say this issue is "clearly stronger" than those presented by appellate counsel on appeal. As a result, the Court finds appellate counsel's conduct was not so far below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. Again, even if the Court found appellate counsel's performance deficient, Turner cannot show the outcome of his appeal would have been different by including this ground when the state appellate court found the evidence presented at trial was sufficient to support his convictions for murder and felonious assault with gun specifications. *State v. Turner*, 2017-Ohio-5560, 2017 WL 2803118, at **2-4. Therefore, there is no *Strickland* violation for Ground Five.

  **2.  Ground Seven**

  In Ground Seven, Turner asserts he is "being held in violation of the Constitution of the United States, for the reason that my convictions for Felony-murder and Felonious Assault are in violation of the Double Jeopardy Clause." (Doc. No. 10; Doc. No. 13 at 22.) In his Supplemental Answer/Return of the Writ, Respondent states this ground is "premised on double jeopardy." (Doc. No. 14 at 1.) Respondent asserts, "The state Court of Appeals adjudicated double jeopardy, and thus the issue of double jeopardy is exhausted and ripe for a merits adjudication under 28 U.S.C. §2254(d) [the AEDPA]." (*Id.*) Respondent then goes on to argue that Ground Seven is meritless under the AEDPA. (*Id.* at 2-10.)

  Respondent echoed this argument in the beginning of his opposition to Turner's motion to expand the record as it related to Ground Seven. (Doc. No. 17 at 2.) However, just two pages later, Respondent stated:

> First, it may be overlooked that the issue before the state courts was that Turner could not, or should not, be retried for felony murder after his acquittal of aggravated murder. This was the argument below. (Exhibit 16, Turner's brief, Page ID#143-149.) This is not habeas claim seven where Turner now argues that the Double Jeopardy clause bars his conviction for both felony murder *and* felonious assault. Thus to the

> extent Turner seeks to add felonious assault to his Double Jeopardy claim, that portion of habeas ground seven is unexhausted and may subject Turner's entire petition to dismissal.  *Rose v. Lundy*, 455 U.S. 509, 522 (1982).

(*Id.* at 4) (emphasis in original).

In denying Turner's motion to expand the record as it related to Ground Seven, the Court "decline[d] to make a determination regarding procedural default or exhaustion of any claim when issuing an [sic] ruling on a Motion to Supplement the Record.  The Court will fully consider the parties' arguments regarding procedural default and/or exhaustion when it considers the entire Petition."  (Doc. No. 18 at 3 n.2.)

Viewed alongside Respondent's Supplemental Answer/Return of the Writ, where Respondent asserts the Double Jeopardy ground is exhausted and ripe for a merits adjudication (Doc. No. 14 at 1), the Court finds the Respondent's procedural default argument with respect to felonious assault – raised for the first time in an opposition to a motion to expand the record – is not well-taken.  Further, inherent in the Double Jeopardy challenge Turner raised below to being retried for felony murder is a challenge to being retried for felonious assault, as felonious assault was the underlying felony offense to the felony murder charge in this case.  In analyzing the issue of whether Turner being retried for felony murder violated the Double Jeopardy clause, the state appellate court analyzed felony murder and the underlying felony offense of felonious assault.  Therefore, the Court addresses Turner's Ground Seven on the merits.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. AMEND. V. "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53

33

L.Ed.2d 187 (1977)) (internal quotations omitted).  *See also Walters v. Warden, Ross Correctional Inst.,* 521 F. App'x 375, 375 (6th Cir. 2013); *Palmer v. Haviland*, 273 F. App'x 480, 483-84 (6th Cir. 2008). "The Constitution's protection against double jeopardy 'embodie[s]' the 'extremely important principle' of collateral estoppel, which provides 'that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties." *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1069 (6th Cir. 2015) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 445 (1970)).

As the Sixth Circuit explained in *Wade*:

> The Supreme Court in *Ashe* set out an approach for applying collateral estoppel in criminal cases that "requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 397 U.S. at 444, 90 S.Ct. 1189 (internal quotation marks omitted). As recognized by the Ohio Court of Appeals, collateral estoppel serves as a complete bar against a subsequent prosecution where a fact necessarily determined in the first trial "is an essential element of the subsequent prosecution." *Wade II,* 2008 WL 366143, at *3 (citing *Ashe,* 397 U.S. at 446, 90 S.Ct. 1189). As is relevant here, "collateral estoppel can also bar certain evidence in a subsequent trial" where such evidence involves "an issue of ultimate fact that was determined by a valid and final judgment." *Id.* at *4 (citing *Dowling,* 493 U.S. at 347, 110 S.Ct. 668).

785 F.3d at 1069.  In the estoppel context, "ultimate facts" are those "'necessary to the judgment' at issue."  *Id.* at 1071 (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009)).  "Under this approach, a 'determination ranks as necessary or essential only when the final outcome hinges on it.'"  *Id.* (citing *Bobby v. Bies*, 556 U.S. at 835; Black's Law Dictionary 629 (8th ed. 2004) ("An 'ultimate fact' is simply '[a] fact essential to the claim or the defense.'")).  With respect to hung counts, the Supreme Court has held that consideration of such counts "has no place in the issue-preclusion analysis."  *Yeager v. U.S.*, 557 U.S. 110, 122 (2009).

34

The collateral-estoppel inquiry "should not be applied in a 'hypertechnical' manner, 'but with realism and rationality,'" and "'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'"  *Wade*, 785 F.3d at 1071 (quoting *Ashe*, 397 U.S. at 444) (additional internal quotation marks omitted).

Turner argues the state appellate court's decision to deny his appeal on this issue (*Turner I*) and "allow the second trial to take place was contrary to and/or an unreasonable application of federal law," specifically *Yeager v. U.S.*, because the jury decided the "ultimate fact" in the first trial that Turner "<u>had</u> <u>not</u> caused the death of the victim."  (Doc. No. 10 at 2-3) (emphasis in original).  In his Reply/Traverse, Turner asserts:

> Turner contends that the jury found that he did not cause the death of the victim because the state produced an additional witness that testified the actual individual the [sic] shot the victim was wearing a black or dark colored hoody, but couldn't identify the person.  And Turner had been positively identified at the scene wearing a white T-shirt when the shots were fired.  The witness that identified Turner wearing the white t-shirt informed the reporting officer Sergeant Prough that he had retreated into his apartment and then heard the shots.  The state also presented evidence that approximately three hours before the shooting Turner was seen leaving his hotel room wearing what appeared to be a dark hoody so as to suggest to the jury it was Turner that shot the victim.  The jury clearly did not believe it to be so, because the state's own witness clearly identified Turner wearing a white [sic] while its other witness identified the shooter wearing a dark colored hoody.

(Doc. No. 13 at 23-24.)[6]

---

[6] Turner "notes" Respondent "has not submitted the transcripts from Turner's first trial in preparing the record for the court[]."  (Doc. No 13 at 23.)  Turner moved to expand the record solely as to Ground Seven (Doc. No. 16), which Respondent opposed (Doc. No. 17) and the undersigned denied (Doc. No. 18).  As the undersigned found in that order, Turner's arguments to the state appellate court focused on the statutory language for felony murder and aggravated murder.  (*Id.* at 5.)  Turner did not reference any portion of his first trial transcript when making his arguments.  (*Id.*)  And in reaching its decision, the state appellate court did not discuss the evidence presented to the jury at trial.  (*Id.*)  Therefore, the undersigned concluded the first trial transcript was not needed to resolve Ground Seven.  (*Id.* at 6.)  Moreover, courts within the Sixth Circuit who have resolved similar claims focused on the statutory construction of the two charges, rather than the evidence presented at trial.  (*Id.*) (citing *Landers v. Robinson*, 2019 WL 284436, at *4 (S.D. Ohio Jan. 22, 2019); *Smith v. Erdos*, 2016 WL 6248259 (S.D. Ohio Oct. 26, 2016)).

Respondent counters that "[t]he death of the victim is but one element; the intent or circumstances of the death complete the offense." (Doc. No. 14 at 8.) Respondent argues, "it is entirely reasonable that the jury could have logically concluded that the State failed to prove the mental element of 'purpose' and 'with prior calculation and design' required for aggravated murder even though it proved that Mr. Turner caused Mr. Singh's death." (*Id.*) "Moreover, as the state court noted at ¶ 13, the statutes in question require elements not contained in the other." (*Id.*) Therefore, the state appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law. (*See id.* at 7-9.)

The state appellate court addressed Turner's Double Jeopardy argument in *Turner I* and rejected it on the merits:

> {¶ 6} In his sole assignment of error, Mr. Turner argues that the trial court erred in denying his Motion to Dismiss because the doctrine of collateral estoppel bars the State from retrying him for felony murder and the accompanying gun specification. Specifically, Mr. Turner contends that because the jury in his first trial acquitted him of aggravated murder and the accompanying firearm specification, he cannot now be retried for felony murder and the accompanying firearm specification thereto because the jury in the first case decided a critical issue of ultimate fact in his favor; that he did not cause the death of Mr. Singh. We disagree.

> **\*2** {¶ 7} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 787 (1969), states "nor shall any person be subject for the same offence or be twice put in jeopardy of life or limb [.]" Section 10, Article I of the Ohio Constitution contains a similar prohibition, which is coextensive with the federal constitutional protection. *State v. Resor,* 6th Dist. Huron No. H–08–028, 2010–Ohio–397, ¶ 11, citing *State v. Brewer,* 121 Ohio St.3d 202, 2009–Ohio–593, ¶ 14. "The [Double Jeopardy Clause] provides protection from a second prosecution for the same offense after an acquittal, protection against a second prosecution after a conviction and protection against multiple punishments for the same offense." *Resor* at ¶ 11, citing *United States v. DiFrancesco,* 449 U.S. 117, 129 (1980); *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969).

> {¶ 8} While the Double Jeopardy Clause does not ordinarily bar a retrial following a hung jury, *Richardson v. United States,* 468 U.S. 317, 324 (1984), it does incorporate the doctrine of collateral estoppel. *State v. Lovejoy,* 79 Ohio St.3d 440, 443–444 (1997). The United States Supreme

Court has stated that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443 (1970). Collateral estoppel in the criminal context bars "'the state * * * from relitigating an issue decided in the defendant's favor by a valid and final judgment.'" *State v. Haggard,* 9th Dist. Lorain No. 98CA007154, 1999 WL 812937, *2 (Oct. 6, 1999), quoting *State v. Zanders,* 121 Ohio App.3d 131, 134 (9th Dist.1997), citing *Ashe* at 445; *see Lovejoy* at 443–444. "'Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first.'" *State v. Buzanowski,* 8th Dist. Cuyahoga No. 99854, 2014–Ohio–1947, ¶ 32, citing *State v. Edwards,* 8th Dist. Cuyahoga Nos. 94568, 94929, 2011–Ohio–95, ¶ 17, quoting *Brown v. Ohio,* 432 U.S. 161, 166–167, fn. 6 (1977). Nevertheless, "'a mere overlap in proof between two prosecutions does not establish a double jeopardy violation.'" *In re Burton,* 160 Ohio App.3d 750, 2005–Ohio–2210, ¶ 10 (1st Dist.), citing *United States v. Felix,* 503 U.S. 378, 386 (1992).

{¶ 9} The United States Supreme Court has held that when a defendant has been acquitted in a prior proceeding, courts must "'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Yeager v. United States,* 557 U.S. 110, 120 (2009), quoting *Ashe* at 444 (internal quotation marks omitted); Mayers & Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions,* 74 Harv.L.Rev. 1, 38–39 (1960). In other words, "a reviewing court must examine the record of the previous proceeding in order to ascertain which issues were actually decided." *In re Burton* at ¶ 12, citing *State v. Phillips,* 74 Ohio St.3d 72, 80 (1995). The defendant bears the burden of showing "that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *In re Burton* at ¶ 12, citing *Dowling v. United States,* 493 U.S. 342, 350–351 (1990).

{¶ 10} Here, Mr. Turner was charged and acquitted of aggravated murder in violation of R.C. 2903.01(A), which provides "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *." "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "[p]rior calculation and design indicates * * * studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim." (Internal quotations

omitted.) *State v. Patel,* 9th Dist. Summit No. 24030, 2008–Ohio–4693, ¶ 33, quoting *State v. Taylor,* 78 Ohio St.3d 15, 19 (1997).

{¶ 11} Mr. Turner was also charged with committing felony murder in violation of R.C. 2903.02(B). The jury, however, was hung on that count. R.C. 2903.02(B) provides:

> No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

The mens rea element required to commit felony murder is the mens rea element set forth in the underlying felony offense. *State v. Horton,* 9th Dist. Summit No. 26407, 2013–Ohio–3902, ¶ 20, citing *State v. Fry,* 125 Ohio St.3d 163, 2010–Ohio–1017, ¶ 43. Here, felonious assault was the predicate offense, which has a mental element of "knowingly." *Id.,* citing R.C. 2903.11(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 12} After a thorough review of the record and the charges, we conclude that Mr. Turner has failed to meet his burden of demonstrating that the jury actually decided the issue of whether he caused Mr. Singh's death. The issue of ultimate fact that the jury had to resolve to reach an acquittal for aggravated murder was not whether Mr. Turner caused the death of Mr. Singh, but whether he caused Mr. Singh's death purposely and with prior calculation and design. The jury could have logically concluded that the State failed to prove the mental element of "purpose[ ]" and "with prior calculation and design," even though it proved that Mr. Turner caused Mr. Singh's death. *See* R.C. 2903.01(A).

{¶ 13} While Mr. Turner is correct that R.C. 2903.01(A) and R.C. 2903.02(B) both require the State to prove that a defendant "cause[d] the death of another" in order secure a conviction, both statutes also require additional elements not contained in the other. Because "purpose [ ]" and "with prior calculation and design" are not elements of felony murder as charged in this case, and because aggravated murder does not require proof of any predicate offense, aggravated murder and felony murder are not the "same offence" and there is no bar to successive prosecution. *See Resor,* 2010–Ohio–397, at ¶ 14, citing *State v. Zima,* 102 Ohio St.3d 61, 2004–Ohio–1807, ¶ 20, citing *United States v. Dixon,* 509 U.S. 688, 696 (1993).

38

{¶ 14} Therefore, Mr. Turner's double jeopardy rights are not implicated and his acquittal of aggravated murder does not preclude a retrial on the felony murder charge and the accompanying firearm specification. The trial court did not err in denying Mr. Turner's Motion to Dismiss.

{¶ 15} Mr. Turner's sole assignment of error is overruled.

*State v. Turner*, 2015-Ohio-996, 2015 WL 1227869, at \*\*1-4 (Ohio App. 9th Dist. Mar. 18, 2015.)

The Court finds the state appellate court's determination that Turner's acquittal of aggravated murder did not preclude a retrial for felony murder, with felonious assault as the predicate felony was not contrary to or an unreasonable application of federal law.  Under the Supreme Court's collateral estoppel framework in *Ashe*, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."  *Ashe*, 397 U.S. at 444 (internal quotation and citation omitted).  Here, as the state appellate court found, the elements of aggravated murder and felony murder are not the same and require additional elements not found in the other.  O.R.C. § 2903.01(A) ("No person shall purposely, and with prior calculation and design, cause the death of another . . . .); O.R.C. 2903.02(B) ("No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.").  The elements for felonious assault, the underlying felony for felony murder, are knowingly causing serious physical harm to another or knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance.  O.R.C. § 2903.11(A).  Under Ohio law:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there

is a high probability of its existence and fails to make inquiry or acts with
a conscious purpose to avoid learning the fact.

O.R.C. § 2901.22(B).  *Cf.* O.R.C. § 2901.22(A) ("A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.").

After review of the record and the charges, the state appellate court determined Turner failed to meet his burden of showing the jury actually decided the issue of whether he caused the victim's death. *Turner*, 2015-Ohio-996, 2015 WL 1227869, at *3.  The state appellate court concluded the issue of ultimate fact decided by the jury in Turner's first trial when it acquitted him of aggravated murder was that Turner did not purposely and with prior calculation and design cause the victim's death. *Id.*  The state appellate court determined a rational jury could have concluded that the State failed to prove the *mens rea* requirement of aggravated murder (purposely and with prior calculation and design), even though it proved Turner caused the victim's death. *Id.*

In the estoppel context, "ultimate facts" are those "'necessary to the judgment' at issue." *Wade*, 785 F.3d at 1071 (quoting *Bobby v. Bies*, 556 U.S. at 835).  "Under this approach, a 'determination ranks as necessary or essential only when the final outcome hinges on it.'" *Id.* (citations omitted.)  Here, it is undisputed that acting purposely and with prior calculation and design are not essential elements of felony murder.  The *mens rea* requirement for felony murder, with felonious assault as the underlying offense, is "knowingly," and that element was not eliminated in Turner's subsequent trial by the jury's acquittal of aggravated murder in his first trial.  The Court agrees, under the *Ashe* framework, a rational jury could have concluded Turner did not act purposely and with prior calculation and design, therefore acquitting him of aggravated murder, while still determining Turner caused the victim's death.  Therefore, the Court cannot say that the state appellate court's determination was unreasonable.

Under the circumstances presented here, the state appellate court was not unreasonable in concluding that Turner's Double Jeopardy rights were not implicated by a retrial for felony murder. Accordingly, the Court recommends Turner's seventh ground for relief be DENIED.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED IN PART and DENIED IN PART.

Date:  February 28, 2020                         _s/ Jonathan Greenberg_
                                                 Jonathan D. Greenberg
                                                 United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  _See United States v. Walters_, 638 F.2d 947 (6th Cir. 1981); _Thomas v. Arn_, 474 U.S. 140 (1985), _reh'g denied_, 474 U.S. 1111 (1986).**